UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:07-CR-151 |
| | ) | |
| V. | ) | (Varlan / Shirley) |
| | ) | |
| CHARLES D. ELDER, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by Order [Doc. 28] of the Honorable Thomas A. Varlan, United States District Judge for a report and recommendation regarding disposition by the district court of Defendant Charles Elder's Motion to Dismiss "Schoolhouse Statute" from the Superseding Indictment [Doc. 27], filed on May 20, 2008. The government filed a Memorandum in Opposition [Doc. 30]. The parties appeared before the Court on June 2, 2008 for an evidentiary hearing. The government was represented by Assistant United States Attorney David Lewen. Attorney Douglas Trant appeared on behalf Defendant Elder, who was also present. Since neither party requested the filing of post-hearing briefs, the Court took this matter under advisement on June 3, 2008.

**I.      Position of the Parties**

Defendant Elder moves to dismiss the schoolhouse allegation in the Superseding Indictment [Doc. 24] because of its inapplicability to the facts of this case. Defendant Elder contends while he drove on a public street near the Green Hills Elementary School and stopped at a Weigel's

convenience store some 900 feet from the school, there is no proof that he intended to use the Weigel's to sell drugs to school children. Defendant does not question that the Weigel's is within 1,000 feet of the school and cites United States v. Coates, 739 F.Supp. 146 (S.D.N.Y. 1990) and United States v. Liranzo, 729 F.Supp. 1012 (S.D.N.Y. 1990) as support for his motion. He argues that in his case, his stopping at Weigel's without intending to utilize the location to sell drugs is the same as if he continued to drive by Weigel's.

As a threshold matter, the government, in response, argues the two cases cited by Defendant are distinguishable from the matter currently before the Court for consideration. The government argues Defendant was not merely driving by the Green Hills Elementary school when he stopped, but that he drove his vehicle into the Weigel's parking lot, parked his vehicle, and entered the Weigel's on his own volition. The government cites to United States v. Lloyd, 10 F.3d 1197 (6th Cir. 1993) in support of its proposition that no *mens rea* is required under 21 U.S.C. § 860 in order for the district court to double the possible penalty as long as the person possessed a certain amount of drugs (felony possession) within 1,000 feet of a school.

## II.     Motion Hearing Testimony

Neither the government nor the defense called any witnesses. Both parties relied on oral argument in support of their motion. The parties stipulated that the Weigel's is approximately 900 feet from the Green Hills Elementary School and Attorney Trant offered a map of the City of Knoxville as Exhibit 1, reflecting the two locations and the distance in between, which the Court received.

**III.    Findings of Fact**

For purposes of disposition of this motion, the Court notes there are no facts in dispute. Accordingly, there is no need for the Court to engage in factual finding. The Court accepts the parties stipulation that the Green Hills Elementary School is within 1,000 feet of the Weigel's convenience store where Defendant parked his vehicle, entered the store, and was subsequently arrested when an amount greater than five grams of cocaine base was removed from his person [Doc. 29].

**IV.    Analysis**

Count I of the Superseding Indictment [Doc. 24] charges Defendant Elder under the Drug Free School Zones Act, 21 U.S.C. § 860 (the "Schoolyard Statute"), which enhances the sentence of "any person who violates section 841(a)(1) of this title or section 856 of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational or secondary school ..." The Weigel's where Defendant stopped is located within one thousand feet of the Green Hills Elementary School. Defendant moves for dismissal of this language from the Superseding Indictment on the grounds that it is inapplicable to the facts currently before the Court. Defendant contends that the facts of his case are similar to United States v. Liranzo, 729 F.Supp. 1012, 1013 (S.D.N.Y. 1990), which held that the schoolyard statute, and thus the enhanced sentence, was inapplicable since the defendant, who was arrested in the Port Authority bus terminal in possession of approximately a kilogram of cocaine, did not intend to distribute the cocaine within 1,000 feet of the school, but rather was taking it to another location for delivery to another person

3

and United States v. Coates, 739 F.Supp. 146, 152-53 (S.D.N.Y. 1990), which also held that the schoolyard statute, and thus the enhanced sentence, was inapplicable since the defendants arrested in Penn Station in possession of a large amount of cocaine, and although within 1,000 feet of a school, did not intend to distribute the cocaine within the 1,000 feet of the school, but rather were using the train to transport the drugs to Maryland. Thus, Defendant argues section 845(a) was not designed to apply in those situations where a defendant is on a "train[], or any other means of transportation, speed[ing] by a school on their way to a narcotics sale." Id. at 153 (citing Liranzo, 729 F.Supp. 1012).

While Defendant is correct in asserting the rule of law applicable to section 860 as interpreted by the Southern District of New York under the facts of Liranzo and Coates, this Court declines to reach the same result in this case, under these facts.

For the reasons discussed below, this Court instead "construes the statute to proscribe possession, within 1,000 feet of a school, of a quantity sufficient to indicate intent to distribute (felony possession). This construction is supported by legislative history and by the congressional purpose to create a 'drug-free zone' around our nation's schools." United States v. Wake, 948 F.2d 1422, 1430 (5th Cir. 1991).

The Court begins its analysis with the Sixth Circuit's decision in United States v. Cross, 900 F.2d 66, 69 (6th Cir. 1990), which held § 860's (formerly § 845a) lack of knowledge requirement in regard to the proximity of a school does not violate due process since "the intent of Congress is clear: section 845a [currently § 860] does not expressly require *mens rea*; and the purpose of the statute-deterring drug distribution in or around schools-suggests that Congress did not incorporate any *mens rea* requirement into the statute." Id. (citation omitted). The Court further noted that

4

section 860 "does not criminalize otherwise innocent activity, for the statute applies only to persons who have violated 21 U.S.C. 841(a)(1), which already contains a *mens rea* requirement - "knowingly or intentionally ... distribut[ing] ... a controlled substance." Id. Then, in United States v. Lloyd, 10 F.3d 1197, 1218 (6th Cir. 1993), the Sixth Circuit, relying on its previous holding in Cross, held that the district court's jury instruction in defendant's § 860 case was proper when it advised the jury that "[t]he government need not prove that the defendant intended to distribute the cocaine or base within a thousand feet of the school." The Sixth Circuit reasoned that the since "this court has interpreted this statute [21 U.S.C. § 860] as not incorporating any *mens rea* requirement, ... the jury did not need to find an intent on [defendant's] part to deliver the drugs within 1000 feet of the school." Id. Thus, "[t]he language of § 860 supports the conclusion that the statute punishes drug possession with intent to distribute near a school, whether or not the intended target for distribution is within the area surrounding the school." United States v. Ortiz, 146 F.3d 25, 28 (1st Cir. 1998) (*en banc*).

Additionally, five courts of appeals, the First Circuit, the D.C. Circuit, the Third Circuit, the Fifth Circuit, and the Tenth Circuit have all rejected Defendant's interpretation of the statute and interpreted § 860 to "mean that so long as the possession in violation of § 841(a)(1) occurs within 1000 feet of a school, the maximum punishment is doubled", even if the defendant intends to distribute the drugs elsewhere. United States v. McDonald, 991 F.2d 866, 868 (D.C. Cir. 1993) (emphasis supplied); see also United States v. Harris, 313 F.3d 1228, 1240 (10th Cir. 2002) (citing Lloyd with approval); United States v. Ortiz, 146 F.3d 25, 28 (1st Cir. 1998) (*en banc*); United States v. Rodriguez, 961 F.2d 1089, 1092-95 (3d Cir. 1992); and United States v. Wake, 948 F.2d 1422, 1431-33 (5th Cir. 1991). The Court finds these opinions and the reasoning employed

5

persuasive and adopts their holdings in consideration of this case.

In the McDonald case, the D.C. Circuit found "the distinction § 860 makes is between those who violate § 841(a)(1) inside the school zone and those who violate § 841(a)(1) elsewhere. Because they endanger students, the former commit the more serious offense, and § 860 thus makes their potential punishment more severe." 991 F.2d at 870. The D.C. Circuit further stated "[t]o hold otherwise, to exclude from § 860's reach all possessors of large quantities of drugs in the vicinity of schools except those intending to distribute them there, would be to adopt an interpretation without supplying a rationale." Id. In the Ortiz case, the First Circuit, in finding district court rulings including Coates and Liranzo unpersuasive, held:

> If we require proof of intent to distribute only within the school zone, as these district courts did, the statute would exclude many cases where the presence of drugs, in fact, increased the risk of harm to students. In view of the danger that the mere presence of drugs near a school presents, the district courts' interpretation [including Liranzo and Coates] would provide an escape-hatch for a defendant when, as here, the government is unable to establish precisely where the drugs were meant to be distributed, thereby defeating the intent of Congress.

146 F.3d at 29. The First Circuit further concluded "the interpretation espoused by these district court cases is vulnerable to other imprecisions as well ... imagine a situation where a defendant intends to distribute drugs within a school zone, but at that time, school is no longer in session. In such a circumstance, the district courts' interpretation would also sweep into its net defendants who did not pose any threat to students" Id. (citation omitted). The Third Circuit, in the Rodriguez case, participated in a significant analysis of the legislative history of the schoolyard statute and found "that Congress did not intend to require proof of an intent to distribute drugs near a school" but that the provision was "to apply whenever a defendant is apprehended near a school with a quantity of

drugs sufficient to indicate an intent to distribute." 961 F.2d at 1092-93 (internal quotations omitted). And finally, in the Wake decision, the Fifth Circuit, which was the first Court of Appeals to rule on the issue of "whether the jury could convict [a defendant] under [§ 860] if it found that he possessed a controlled substance within 1,000 feet of a school with intent to distribute it somewhere," 948 F.2d at 1430, looked at both the "particular statutory language" and "to the design of the statute as a whole and to its object and policy," and held that "the statute [was] clear in proscribing the possession, within the school zone, of a felony quantity of a controlled substance - that is, an amount that evidences an intent to distribute the drugs somewhere" with the goal "to lessen the risk that drugs would be readily available to school children." Id. at 1431-33 (citation omitted).

Therefore, this Court feels that based on its holdings in Cross and Lloyd, the Sixth Circuit would follow the holdings of these five Circuit Courts of Appeal and not require the government to prove intent to distribute within the protected zone.

In this case, Defendant Elder was arrested in the parking lot of a Weigel's convenience store, allegedly in possession of an amount greater than five grams of cocaine base. The parties agree this Weigel's is within 1,000 feet of the Green Hills Elementary School. Accordingly, at the place and time Defendant was arrested, he is alleged to have been in possession of an amount of drugs considered sufficient for felony possession inside a school zone, and if proven, the Defendant would be deemed to have violated § 841(a)(1) "inside [a] school zone" and by being inside the school zone "endanger[ed] students", even if he did not intend to distribute those drugs to school children or on the school's grounds. McDonald, 991 F.2d at 870. Thus, under the framework adopted by this Court, the application of the schoolyard statute in this case is proper. Defendant was apprehended

for "certain criminal conduct ... near [a] school", thus § 860's applicability was triggered. Rodriguez, 961 F.2d at 1094.

While Defendant contends "all [he] did was drive on a public street by the school in question and stop at a convenience store some 900 feet from the school" [Doc. 27], thus his use of transportation to drive near the school is not within the applicability of the statute, the Court finds his assertion in error. First, Defendant did not just "drive by" the Green Hills Elementary school; he parked his vehicle and physically entered the Weigel's. At the time he was apprehended, he was not "ensconced in" a train or a bus, speeding past a school, nor was he using any means of transportation. Second, this Court finds a convenience store is substantially different from the Port Authority or Penn Station. Normally, one's presence in a location such as Port Authority or Penn Station is for the purpose of, or at least gives rise to the assumption that the person is, using the transportation provided, a bus or a train respectively, to travel elsewhere. No such purpose or assumption can arise from Defendant's presence in Weigel's. Although this Court respectfully rejects the Southern District of New York's more narrow reading of § 860 for the reasons outlined above, the Court nonetheless finds the actions and locations of the defendants in the Coates and Liranzo cases are so uniquely different as to make the facts in those cases wholly inapplicable to the case here.

## VI. Conclusion

For the reasons set forth herein, it is **RECOMMENDED** that Defendant Elder's Motion to Dismiss "Schoolhouse Statute" in the Superseding Indictment **[Doc. 27]** be **DENIED**.[1]

Respectfully submitted,

  s/ C. Clifford Shirley, Jr.  
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed with the clerk of the court within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Fed. R. Civ. P. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).