UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:07-CR-151 |
| | ) | |
| V. | ) | (Varlan / Shirley) |
| | ) | |
| CHARLES D. ELDER, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by Order [Doc. 25] of the Honorable Thomas A. Varlan, United States District Judge, for a report and recommendation regarding disposition by the district court of Defendant Charles Elder's Motion to Suppress Evidence [Doc. 22], filed on May 7, 2008. The government filed a Memorandum in Opposition [Doc. 29]. The parties appeared before the Court on June 2, 2008 for an evidentiary hearing. The government was represented by Assistant United States Attorney David Lewen. Attorney Douglas Trant appeared on behalf Defendant Elder, who was also present. At the conclusion of the hearing, Defendant requested leave to file post hearing briefs. Counsel for Defendant was given until June 6, 2008 to file any supplemental information. The government was given until June 13, 2008 to file a response. Defendant filed his supplemental brief [Doc. 34] on June 3, 2008, and the government filed its response [Doc. 36] on June 13, 2008. Accordingly, the Court took this matter under advisement on June 16, 2008.

**I.     Position of the Parties**

Defendant Elder moves to suppress all physical evidence obtained at the scene of his arrest on September 28, 2007, or subsequent to his arrest, on the basis that his arrest was not supported by probable cause, thus the police were in violation of the Fourth Amendment when they searched his person. While arrested for reckless driving, public intoxication, and possession of cocaine, Defendant Elder contends there was no probable cause to support an arrest for any of the above listed charges, thus the seizure of any evidence was not done pursuant to a legal arrest, and therefore, should be suppressed.

The government, in response, argues the officers had probable cause to arrest Defendant for numerous violations of Tennessee law, including reckless driving and public intoxication. The government further contends since the officers had probable cause to arrest Defendant, they were constitutionally permitted to conduct a search of his person incident to his arrest.

**II.     Suppression Hearing Testimony**

The only witness called by the government was Knoxville Police Department Officer J.D. Sisk. The defense did not call any witnesses, but requested the Court review two video recordings and include the information in its factual findings. Defense counsel advised Exhibit 2 was a recording from Weigel's and Exhibit 3 was a recording from Sergeant Taylor's police cruiser. The Court conducted the requested review, and accordingly, summarized the content of the videos below.

  *A. Officer J.D. Sisk*

The government called Knoxville Police Department Officer J.D. Sisk as its only witness.

Officer Sisk has been employed by the KPD for six years and has worked in the Repeat Offender Unit for the past eight months. Prior to that, Officer Sisk was a patrol officer for five years, with his primary duties including answering calls for service and traffic offenses.

Regarding the evening of September 28, 2007, Officer Sisk testified that he was going to the Weigel's on Summit Hill Drive in Knoxville, Tennessee around 7:30 p.m to pick up some sodas for his unit, which was participating in a drug investigation. He stated he remembered it was a clear evening. Officer Sisk further testified that he was driving on Hill Avenue, preparing to make a left onto Summit Hill. He stated he was about a half of a mile from the Weigel's.

When asked to describe the landscape of the half mile of Summit Hill he was facing from Hill Avenue, Officer Sisk stated it is a four lane roadway, which is separated by a median, with sidewalks on both sides and a crosswalk. He further stated that there are trees on the median and that the road has gradual hills and some curves. Officer Sisk then testified that part of Summit Hill goes through a school zone. While there are speed limit signs flashing 20 miles per hour during the day, Officer Sisk stated that they signs do not flash at night. The normal speed limit on Summit Hill, when school is not in session, is 35 miles per hour, which is also indicated by posted signs. Officer Sisk stated that on the date in question, there was moderate vehicle traffic and some pedestrian traffic in the crosswalk, which leads to the Green Magnet School. He further stated that most people do not use the crosswalk to cross Summit Hill, but instead cross the street wherever they happen to be walking on the sidewalk.

Officer Sisk further testified that he was driving an unmarked police car, was dressed in jeans and a t-shirt, and had a firearm on him. He stated he did not have handcuffs on him nor did his car have a radio.

3

Officer Sisk testified that when he first saw the Defendant, the Defendant was in the right lane on Summit Hill and driving a dark green Camaro. Defendant accelerated to within ½ of a car length to the car in front of him and then abruptly changed lanes into the left lane to pass the car in front of him, and then abruptly changed back into the right lane, which caused the car he had just passed to have to slam on its brakes. Defendant did not use his turn signal to change lanes. Officer Sisk stated he did not actually see the brake lights of the car Defendant passed in front of, but could see that the car pitched forward from the impact of having to brake hard and stop short. Officer Sisk further stated that he remembered pedestrians were on the sidewalk as he was watching Defendant drive. In regard to Defendant's speed, Officer Sisk testified he was able to discern that Defendant was driving 60 miles per hour by "pacing" the Defendant, which he explained meant that he followed the Defendant, staying the same distance for about a 1/4 mile and could tell Defendant's speed by the speed on his own speedometer. Officer Sisk then stated he felt Defendant was driving recklessly since his driving was affecting other drivers on the road and was presenting a danger for pedestrians.

Officer Sisk further stated he then saw Defendant turn into the Weigel's parking lot, and again, Defendant did not use his turn signal. Officer Sisk also pulled into Weigel's parking lot, and stated he saw a marked KPD police cruiser in the parking lot. Defendant parked his vehicle on the west side of the lot and got out of the car from the driver's side. No one else exited the vehicle with the Defendant. Officer Sisk then stated he walked to the front door of Weigel's as Defendant was coming into the Weigel's from the other side of the parking lot. At this time, as Officer Sisk entered the door, he told Defendant he needed to slow down. He did not identify himself as a KPD officer nor did he charge Defendant with any driving infraction. Officer Sisk further stated when he entered

4

the Weigel's, he saw Sergeant Robert Taylor, also of the KPD. Sergeant Taylor was in uniform. Officer Sisk then stated that in response to his advising Defendant to slow down, Defendant said in a slow voice, "I got road rage". Officer Sisk further testified he started to walk towards the drinks, but then turned around; he felt he needed to investigate Defendant's statement further. Officer Sisk testified he could see that Defendant's eyes were red, watery, and bloodshot and that he could smell a strong, intense odor of burnt marijuana, which indicated to Officer Sisk that Defendant had been smoking marijuana.

Officer Sisk then approached Defendant and asked Defendant for identification. In response, Defendant turned to the left side of his body, which Officer Sisk interpreted as Defendant trying to conceal something. Officer Sisk demonstrated for the Court the motion Defendant made. He stated that in his experience, such movement was not consistent with someone looking for identification, and was concerned that Defendant had a weapon.

At this time, Officer Sisk grabbed the Defendant and put his hands behind his back and called over to Sergeant Taylor for help. He stated he needed Sergeant Taylor's handcuffs to detain Defendant. Officer Sisk testified that Sergeant Taylor also stated that Defendant had an odor of marijuana on him and that his eyes were bloodshot and watery. Officer Sisk stated he did not know whether Defendant had a gun on him so the two officers took Defendant outside of the Weigel's, in front of Sergeant Taylor's cruiser, and Officer Sisk conducted a pat down search. He stated he felt a large bundle in Defendant's right pants pocket and in his left pants pocket he felt a large bundle with some kind of rock like substance on top of the bundle. When asked whether he recognized the rock like substance he felt, Officer Sisk replied affirmatively that he believed it to be crack cocaine. Defendant refused to consent to a search of his person and thus, Officer Sisk

5

arrested Defendant for public intoxication and reckless driving and conducted a search incident to arrest. The search yielded a quantity of crack cocaine (over ten grams) and $1,000 in cash.

On cross-examination, Officer Sisk confirmed Summit Hill was a city street. He also stated that he did not give Defendant a citation for speeding and that when he initially told Defendant to slow down, he intended that to be the end of their encounter. Officer Sisk agreed that if he had cited Defendant for speeding, he would have cited him to city court. Officer Sisk further testified he took Defendant out of the Weigel's in handcuffs to conduct a pat-down search in front of Sergeant Taylor's vehicle.

### B. *Recording from Weigel's*

The Court reviewed the video recording from the Weigel's [Ex. 2]. The first part of the video contains exterior shots of the parking lot, gas station, and Summit Hill Drive. Cars driving past the Weigel's on Summit Hill were recorded as well as cars turning into the Weigel's parking lot, either for gas or to shop in the convenience store. The Court notes the traffic on Summit Hill was continuous.

The video recording also contains footage of recording from inside the Weigel's. The camera mainly recorded people as they entered and exited the store; however, some shoppers were recorded multiple times if they walked in front of the camera over to another area of the store. The angle of the camera also allows to see certain cars pull into parking spots in the lot, if they park close to the entrance.

The camera shows a uniformed KPD officer entering the Weigel's, who, per Officer Sisk's testimony, is later revealed to be Sergeant Taylor. Sergeant Taylor is seen passing the camera a few times prior to Defendant entering the store. The recording also shows Officer Sisk opening the door

6

to enter the Weigel's and stopping and turning in the direction of an individual coming into the store and says something to that person, who is later identified as the Defendant. There is no audio on the recording. The next relevant part of the video is when Defendant is seen in handcuffs being escorted out of the Weigel's by Sergeant Taylor and Officer Sisk. None of the prior interaction between Defendant and Officer Sisk and/or Sergeant Taylor, nor his being handcuffed, is recorded. When the officers are escorting Defendant out of the store, Sergeant Taylor is leading the Defendant and opens the door, while Officer Sisk is behind Defendant, and appears to be holding the handcuffs. The doors to the Weigel's are double glass doors. Sergeant Taylor opens the left door. Defendant starts to walk towards the door to the right, the one which is not open, and then steps over to exit through the left door, held open by Sergeant Taylor. Officer Sisk follows Defendant out of the Weigel's.

### C.     *Recording from Sergeant Taylor's Police Cruiser*

The Court also reviewed the video from Sergeant Taylor's police cruiser [Ex. 3]. The recording begins with Sergeant Taylor driving in the cruiser on Summit Hill and turning into the Weigel's. Sergeant Taylor parked his cruiser and went into the Weigel's. The next relevant part is at 19:14:35 which is when the Defendant comes into view of the camera with Officer Sisk. Defendant is in handcuffs. The parties are talking, but the Court was unable to hear what they were saying. The sound does not come on until later in the recording. At 19:14:53, Officer Sisk is throwing something on the top of the police cruiser (which looks like it could be Defendant's ID). At 19:15:07, Officer Sisk reaches into Defendant's pants pocket and pulls out what looks to be crack cocaine. The second reach into Defendant's pants pocket pulls out money. Officer Sisk checks the

7

other pockets, but no other items are found.[1]

At 19:16:22, Sergeant Taylor bags the evidence while Officer Sisk is seen on his cell phone. The Court cannot tell who he is calling since there is no sound on the video. While Officer Sisk is on the phone, the Defendant is standing in front of the cruiser in handcuffs. At 19:22:18, Defendant is taken out of the view of the camera; at 19:25:55, Defendant is still not in view of the camera, but Officer Sisk is. At 19:26:18, Officer Sisk is talking to Sergeant Taylor and Officer Sisk has in his hand, some of the evidence taken from Defendant. At 19:29:52, the sound comes on and Defendant is observed being read his Miranda rights. He agrees he understands his rights at 19:30:17. At 19:30:20, Defendant was asked if he wanted to tell the police anything about the substance taken out of his pocket. At 19:30:25-19:30:30, the police ask Defendant whether he is on probation or parole. At 19:30:35, Defendant tells the police he does not want to talk about what happened. At 19:30:45, the police tell Defendant, if he changes his mind and decides to talk to them, he has to tell them. At 19:39:14, the police cruiser leaves the Weigel's. At 19:39:22, Defendant asks Sergeant Taylor what he is being charged with, Sergeant Taylor explains the charges to Defendant and adds that the police might seize his car and the cash that was found on him. At 19:39:54, Sergeant Taylor advises Defendant he should try to help himself out. At 19:40:32, Sergeant Taylor asks Defendant if he is on probation, Defendant replies in the affirmative, and agrees that he understands that his arrest is a violation of his probation. At 19:41:21, Defendant asks the officer what probable cause supported the search of his person and the officer replied the driving charges and that Officer Sisk believed Defendant was intoxicated from marijuana. At 19:41:38, the Defendant states that Officer

---

[1] Officer Sisk's testimony that before reaching into Defendant's pockets, he first conducted a pat down search, felt "bundles" in each pocket, sought consent to search, and then arrested Defendant (so that the search was incident to arrest) is not shown on the recording.

8

Sisk did not pull him over, but instead just told him to slow down when he saw Defendant enter the Weigel's. Defendant told Sergeant Taylor that he said to Officer Sisk that he had a "little bit of road rage" and that he apologized to him. Sergeant Taylor told Defendant at 19:42:09 that if Officer Sisk placed him under arrest, he can search him incident to the arrest. At 19:44:43, Defendant is taken out of the cruiser and brought into the police station.

### III. Findings of Fact

The Court finds that on September 27, 2007 around 7:30 p.m., Officer J.D. Sisk was driving to the Weigel's on Summit Hill Drive. He was driving an unmarked car on Hill Avenue, preparing to make a left onto Summit Hill. He was wearing plain clothes and was about a half of a mile from the Weigel's.

Summit Hill is a four lane roadway, separated by a median, which has trees planted on it. Sidewalks are on both sides of Summit Hill and are used for pedestrian foot traffic. Summit Hill also contains a crosswalk to allow for pedestrians to cross the street. Summit Hill is a road which has gradual hills and some curves. The speed limit on Summit Hill is 35 miles per hour unless the 20 miles per hour speed limit signs are flashing since this area of Summit Hill is a school zone. The Green Magnet School is located near Summit Hill. On this date and time, the school zone speed limit did not apply, thus, the applicable speed limit was 35 miles per hour. Furthermore, at this time, there was moderate vehicle traffic as evidenced by the recording of the Weigel's parking lot and Officer Sisk's testimony. There was also some pedestrian traffic on the sidewalks and in the crosswalk.

Officer Sisk first noticed the Defendant, who was driving a dark green Camaro, in the right

9

lane on Summit Hill. Defendant was driving fast and changing lanes abruptly, from the right lane to the left lane and then back to the right lane. He changed from the right lane to the left lane to pass another vehicle and then, when he changed back into the right lane, he was in front of that vehicle, which had to slam on its breaks when Defendant re-entered the right lane. Defendant did not use his turn signal to change lanes. Defendant was driving 60 miles per hour on this particular stretch of Summit Hill, which Officer Sisk determined by "pacing" the Defendant.

Defendant then turned into the Weigel's parking lot, but did not use his turn signal. Officer Sisk also pulled into the parking lot. There was also a KPD police cruiser in the parking lot. Defendant parked his car on the west side of the parking lot and approached the door to the Weigel's. Officer Sisk got to the door first, opened it, and then looked in the direction of the Defendant and told him to slow down. Officer Sisk did not say anything else to the Defendant at this time, nor did he issue him a citation for a traffic violation. Defendant responded to Officer Sisk by saying "I've got road rage" and apologized for his driving.

Officer Sisk was bothered by Defendant's response that he had road rage, so he decided to approach the Defendant to investigate his statement further. Sergeant Taylor, in uniform, was also in the Weigel's at this time. Defendant's eyes were red and watery and Defendant smelled of burnt marijuana. When Officer Sisk approached Defendant and asked for identification, Defendant turned to the left side of his body. This movement was interpreted by Officer Sisk as consistent with someone who was armed and reaching for a weapon and not someone looking for identification.

Officer Sisk then grabbed Defendant and held his hands behind his back while he called to Sergeant Taylor for assistance, namely to bring his handcuffs over so Defendant could be detained. Officer Sisk and Sergeant Taylor then escorted Defendant out of the Weigel's so that they could

10

conduct a pat down search and look for weapons. Sergeant Taylor proceeded in front of Defendant and opened the door so Defendant could exit. Officer Sisk was behind Defendant and was escorting him out of Weigel's and holding onto the handcuffs which were detaining Defendant. Defendant first approaches the right door which is not open, and then steps over to the left door, which Sergeant Taylor opened to exit the Weigel's.

Once outside of Weigel's, Officer Sisk conducted a pat down search of Defendant, which was not recorded on Sergeant Taylor's video camera, but this Court finds Officer Sisk's testimony on this issue unimpeached and credible. Officer Sisk felt a large bundle in both Defendant's pants pockets, the large bundle in the left pocket had a rock like substance on top of the bundle, which Officer Sisk believed was crack cocaine. Defendant refused consent to search his person, thus he was placed under arrest for reckless driving and public intoxication. Officer Sisk reached into Defendant's pants pockets and retrieved a quantity of crack cocaine from the Defendant and then reached in again and retrieved approximately $1,000 in cash. No other items were pulled from Defendant's pockets.

Sergeant Taylor bagged the evidence while Defendant remains outside the police cruiser and Officer Sisk is on his cell phone. Defendant is later read his <u>Miranda</u> rights and tells the officers he has nothing to say to them. He declined to talk about the items recovered from his person. Defendant and Sergeant Taylor then leave the Weigel's parking lot. While in the cruiser, Defendant asks Sergeant Taylor what he is being charged with. Sergeant Taylor asked Defendant if he was on probation or parole and Defendant replied in the affirmative. Defendant also asked Sergeant Taylor what probable cause supported the search, to which Sergeant Taylor replied his reckless driving and that Officer Sisk believed Defendant was under the influence of marijuana. Defendant stated that

11

Officer Sisk just told him to slow down, as they both entered Weigel's. Defendant also stated that he said to Officer Sisk that he had a little bit of road rage and apologized. The Court finds Defendant was lucid, coherent, and attentive when talking with Sergeant Taylor and able to recount to Sergeant Taylor what happened when he first entered the Weigel's and Officer Sisk told him to slow down and his responses thereto.

### IV. Burden of Proof

Although the proponent of a motion to suppress generally bears the burden of establishing his Fourth Amendment rights were violated by a challenged search or seizure, Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978), it is the government's burden to demonstrate by a preponderance of the evidence that a particular seizure was based either on probable cause or reasonable suspicion. United States v. Baldwin, 144 Fed. Appx. 675, 681 (6th Cir. 2004); United States v. Winfrey, 915 F.2d 212, 216 (6th Cir. 1990).

### V. Analysis

Defendant Elder contends that his Fourth Amendment rights were violated because there was no probable cause to arrest him for reckless driving and public intoxication. The government, in response, argues Officer Sisk's testimony at the suppression hearing established that he had probable cause to arrest Defendant for both of the above listed charges.

The Fourth Amendment secures a person's right to be free from unreasonable searches and seizure. Any arrest requires probable cause. See United States v. Waldon, 206 F.3d 597, 602 (6th Cir. 2000). "[A] warrantless arrest must be supported by the existence of probable cause of

sufficient weight to support a belief that the *individual detained committed a criminal offense.*" United States v. McNeal, 955 F.2d 1067, 1071 (6th Cir. 1992) (emphasis in original). "[T]he existence of probable cause should be determined by the totality of the circumstances. This totality of the circumstances analysis includes a realistic assessment of the situation from a law enforcement's perspective." United States v. Ferguson, 8 F.3d 385, 392 (6th Cir. 1993) (citations omitted). "The probability of criminal activity is assessed under a reasonableness standard based on 'an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest.*'" Crockett v. Cumberland Coll., 316 F.3d 571, 580 (6th Cir. 2003) (citation omitted) (emphasis in original) As long as there is probable cause to make an arrest, a warrantless arrest does not violate the Fourth Amendment. United States v. Strickland, 144 F.3d 412, 415 (6th Cir. 1998) (citation omitted). However, an arrest without probable cause does offend the Fourth Amendment. Crockett, 316 F.3d at 580.

### A. Reckless Driving

TENN. CODE. ANN. § 55-10-205(a) provides, "Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property commits reckless driving." Willful or wanton disregard for safety is a "heedless and reckless disregard for another's rights, with the consciousness that the act or omission to act may result in injury to another." State v. Wilkins, 654 S.W.2d 678, 679 (Tenn. 1993) (citing Burgess v. State, 369 S.W.2d 731, 733 (Tenn. 1963)). Willful and wanton disregard is determined from the circumstances of the case. See id. at 680.

Defendant contends, citing Burgess v. State, 369 S.W.2d 731 (Tenn. 1963), that his driving at a high rate of speed is not enough to show willful and wanton disregard for the safety of persons and property, thus, his arrest for reckless driving was not supported by probable cause. However,

13

in a later case, the Tennessee Supreme Court held "under certain facts and circumstances excess speed can be sufficient to sustain a conviction of reckless driving." Wilkins, 654 S.W.2d 680 (stating that establishing that the defendant drove at 120 miles per hour on a highway with hills and curves is sufficient to prove reckless driving). But see State v. Mitchell, 1997 WL 567916, *6-7 (Tenn. Crim. App., 1997) (holding that driving seventy-seven miles per hour when the posted speed limit was fifty miles per hour did not support a verdict for reckless driving when the roadway was straight and flat, it was late at night, and after passing another vehicle, defendant turned into his girlfriend's driveway). While Defendant contends his speeding does not support a reckless driving charge, and perhaps if the evidence established that speeding was his only offense on Summit Hill, he might be correct in his assertion. However, the evidence reveals multiple traffic infractions observed by Officer Sisk, all of which taken together, in such a short amount of time, constitute willful and wanton disregard for another's safety, thus this Court finds there was probable cause to support Defendant's warrantless arrest for reckless driving.

In the present case, the evidence reflects that Officer Sisk observed Defendant driving on Summit Hill Drive, a four-lane roadway, which is hilly, has gradual curves, is surrounded on both sides by sidewalks, and has a crosswalk, evidencing pedestrian traffic, at 7:30 p.m. C.f. Mitchell, 1997 WL 567916, at *6-7 (noting that the roadway was "straight and flat" and it was late at night, thus the only evidence of defendant's reckless driving was his speed, which was not enough to support his conviction). Defendant was driving on Summit Hill at 60 miles per hour. The legal speed limit on Summit Hill 35 mile per hour, thus Defendant was driving twenty-five miles over the speed limit. In order to determine Defendant's speed, Officer Sisk "paced" him. Officer Sisk also observed Defendant failed to use his turn signal on two occasions: (1) when passing another vehicle

14

on Summit Hill and (2) when turning into the Weigel's parking lot. See TENN. CODE. ANN. § § 55-8-142 and 143 (requiring that turn signals be used to indicate turns if other traffic may be affected by the movement). Furthermore, Defendant was seen driving very close, half a car length, (*i.e.,* "tailgating") to the vehicle in front of him, before abruptly changing lanes to pass that vehicle and then quickly changing lanes back into the right lane directly in front and/or cutting off the vehicle behind him and causing that driver to have to slam on its brakes. See State v. Archey, 2002 WL 1732355, *3 (Tenn. Crim. App. 2002) (defendant's car within a few feet of the car in front of it was a contributing factor in finding defendant was driving recklessly). Officer Sisk also testified there were pedestrians on the sidewalks on both sides of Summit Hill. See id. (also factoring in that people "standing on the left side of the red light at the Wal Mart" in its willful and wanton disregard analysis). Thus, the Court finds Defendant Elder's actions were not isolated; they were part of a "continuing course of conduct" until they were terminated by Defendant when he parked his car at Weigel's. State v. Kelley, 2007 WL 2044238, *2 (Tenn. Crim. App. 2007). Accordingly, this Court finds all of these factors taken together demonstrate that probable cause existed to arrest Defendant Elder for reckless driving and violating TENN. CODE. ANN. § 55-10-205.

### B. *Public Intoxication*

The government also contends that Defendant violated Tennessee's public intoxication statute, codified at Tennessee Code Annotated § 39-17-310. The statute provides that:

> A person commits the offense of public intoxication who appears in a public place under the influence of a controlled substance or any other intoxicating substance to the degree that: (1) The offender may be endangered; (2) There is endangerment to the other persons or property; or (3) The offender unreasonably annoys people in the vicinity.

Id. The Court notes that a place of business, specifically the Weigel's, qualifies as a "public place."

TENN. CODE. ANN. § 39-11-106(a)(29). The Court also notes the government is correct in its assertion that public intoxication can be committed inside a privately owned vehicle so long as the vehicle is on a public road or in a public place. See State v. Lawson, 776 S.W.2d 139, 140-41 (Tenn. Crim. App. 1989).

Officer Sisk testified he felt Defendant was under the influence of marijuana because Defendant's eyes were red, watery, and bloodshot and that he smelled the odor of burnt marijuana on Defendant's person, but there is no other evidence in the record of any drug testing being performed once Defendant was brought to the police station by Sergeant Taylor. Thus, this Court is left without any evidence that any testing was done to determine whether or not Defendant was under the influence of marijuana. Additionally, as noted above, the video footage in evidence indicates that Defendant's speech was not slurred and that he was able to carry on a conversation with Sergeant Taylor regarding the charges against him and what constituted probable cause for the search of his person; the recordings, however, are not close enough for the Court to determine whether Defendant's eyes were watery and bloodshot as the testimony described. Furthermore, Defendant had no visible difficulty walking, even though his hands were handcuffed behind his back. Although the only evidence of Defendant's level of intoxication is the odor of burnt marijuana Officer Sisk testified he detected on Defendant and Defendant's eyes as perceived by Officer Sisk, the Court finds probable cause existed to arrest Defendant for public intoxication in light of Officer Sisk's credible testimony on this issue.

As noted above, "[a] person commits the offense of public intoxication who appears in a public place under the influence of a controlled substance or any other intoxicating substance to the degree that" the person "may be endangered" or other persons may be "endangered". TENN. CODE.

ANN. § 39-17-310. Here, Defendant was driving erratically on a public street. Coupled with his erratic driving on Summit Hill, which was observed by Officer Sisk for a period of time, Defendant admitted to Officer Sisk that he had road rage. Furthermore, Defendant's eyes were red, watery, and bloodshot, and he smelled of burnt marijuana. All of these factors considered in combination, evidence as least probable cause to believe Defendant violated the public intoxication statute, TENN. CODE. ANN. § 39-17-310. Officer Sisk's testimony regarding Defendant's erratic driving, road rage statement, and the odor of marijuana and its effect on Defendant's eyes, evidences probable cause to believe Defendant had been endangering other persons or property (to wit, the vehicle in front of him and/or pedestrians in close proximity) and had been reasonably annoying people in the vicinity (*i.e.,* the vehicle in front of him), even though no testimony was given as to this prong of the statute. Nevertheless, the Court finds allowing Defendant to get back into his vehicle would constitute a further danger to himself as others.

## VI. Conclusion

For the reasons set forth herein, the Court finds Officer Sisk's warrantless arrest of Defendant Elder for reckless driving and public intoxication was supported by probable cause, thus the search of Defendant's person was valid as a search incident to arrest. Thus, it is **RECOMMENDED** that Defendant Elder's Motion to Suppress Evidence **[Doc. 22]** be **DENIED**.[2]

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed with the clerk of the court within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Fed. R. Civ. P. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).