IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:07-CR-151 |
| | ) | (VARLAN/SHIRLEY) |
| CHARLES ELDER, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter came before this Court by Order [Doc. 52] referring the United States' Motion for Inquiry Concerning Possible Conflicts of Interest and Memorandum in Support Thereof [Doc. 48] to this Court pursuant to 28 U.S.C. § 636(b)(1). A hearing on the motion was previously held in this matter on September 16, 2008. After that hearing, the Court ordered a final hearing to determine the extent of any potential conflicts of interest and ascertain whether the Defendant or Sgt. Taylor objected to Attorney Trant representing the Defendant in this matter.

The second hearing was held on October 20, 2008. Assistant United States Attorney David Lewen ("AUSA Lewen") appeared on behalf of the Government. Attorney Douglas Trant ("Attorney Trant") appeared on behalf of the Defendant, who was also present. Sergeant Robert Taylor ("Sgt. Taylor") of the Knoxville Police Department was also present.

Attorney Trant first addressed the Court and stated that he had discussed the potential for conflicts that his prior representation of Sgt. Taylor presented with his client. Attorney Trant stated that he did not believe any actual conflict was present, and he stated that Sgt. Taylor had not given him any information in confidence that could be used to impeach Sgt. Taylor. Attorney Trant

explained that as Sgt. Taylor's attorney he had argued that Sgt. Taylor was innocent of any wrongdoing, and he never received any information to indicate wrongdoing by Sgt. Taylor.

Next, the Court heard from the Defendant and then the Government. The Defendant stated that he understood there was a potential conflict that could arise when Attorney Trant cross-examined Sgt. Taylor. However, the Defendant explained that regardless of this potential for a conflict, he wished to have Attorney Trant continue to represent him. AUSA Lewen stated that there was no reason to disbelieve Attorney Trant's statements about the representation, but the Government wanted to follow the Tennessee Rules of Professional Conduct and fulfill the Government's obligations by having a hearing.

Thereafter, the Court addressed Sgt. Taylor. Sgt. Taylor confirmed that he did not reveal any confidences to Attorney Trant that could be used against him if Attorney Trant cross-examined him. Sgt. Taylor also stated that he and his father had maintained their innocence in the matter in which Attorney Trant represented them and that the disposition of the appeal had been favorable. The Court explained to Sgt. Taylor that a trial would likely present a scenario where Attorney Trant will cross-examine Sgt. Taylor and may be required to attempt to discredit Sgt. Taylor's testimony. The Court then asked Sgt. Taylor if he knew of any information other than that contained in public records that he had revealed to Attorney Trant, which Attorney Trant could use against him. Again, Sgt. Taylor stated that no such confidences had been shared.

AUSA Lewen stated that Sgt. Taylor had also affirmed to him that there was no confidential information that would present a conflict. AUSA Lewen explained that since only two officers had witnessed the incident from which the charges against the Defendant arose Sgt. Taylor would almost certainly be called as a witness at trial. Therefore, AUSA Lewen felt it necessary to

bring the potential for conflict to the Court's attention out of an abundance of caution.

After hearing these proffers and examining Sgt. Taylor, the Court announced that there was no actual conflict presented by Attorney Trant's prior representation of Sgt. Taylor and Attorney Trant's current representation of the Defendant. Moreover, the Court found that the potential for a conflict to arise was remote because all evidence before the Court indicated that no confidential information had been revealed to Attorney Trant when he was representing Sgt. Taylor.

Finally, the Court asked the Defendant a series of questions to assure that he wished for Attorney Trant to continue to represent him. The Court asked if the Defendant had any concerns about his representation; he replied that he did not. The Court said that if the Defendant's feelings about the representation had changed during the course of the hearing, he should advise the Court. The Defendant stated that his desire for Attorney Trant to represent him had not changed, and so long as Attorney Trant did not have a problem with the representation, neither did the Defendant. The Court informed the Defendant that this in-depth inquiry into the representation was made to prevent the issue being raised in later proceedings. The Court told the Defendant that if he plead to a lesser charge or went to trial and later decided that he was not pleased with the results, Attorney Trant's representation of him would not be grounds for appeal. The Defendant affirmed that he understood this and that he was comfortable with his decision.

As stated in the Court's previous order, this Court follows the Rules of Professional Conduct adopted by the Supreme Court of Tennessee insofar as they relate to matters within the jurisdiction of the Court. E.D. Tenn. Local R. 83.6 (2008). Rule 1.9 of the Tennessee Rules of Professional Conduct addresses conflicts of interests with former clients. Rule 1.9 instructs:

> Unless the former client consents after consultation, a lawyer who
> has formerly represented a client in a matter, . . . shall not thereafter

> use information relating to the representation to the disadvantage of the former client except as these Rules otherwise permit or require with respect to a client, or when the information has become generally known . . . ."

Tenn. Sup. Ct. R. 8, Rule 1.9(c) (internal punctuation omitted). All testimony before the Court indicates that Attorney Trant's former client, Sgt. Taylor, did not reveal confidential information to Attorney Trant that would have the potential to be used in this case. The Court has consulted Sgt. Taylor about the fact that he will likely be cross-examined by his former attorney, and Sgt. Taylor understands and has no objection. Based on the lack of pertinent confidential information and the Court's consultation with Sgt. Taylor on the issues presented, the Court finds that the obligations contained in the Tennessee Rules of Professional Conduct have been met.

In regards to the Defendant, the Court finds that the Defendant understands the issues presented by Attorney Trant's prior representation of the Defendant and desires to have Attorney Trant continue to represent him. The Court recognizes that the Sixth Amendment right to counsel encompasses the right to have representation that is not inhibited or impaired by the attorney's duty to simultaneously represent conflicting interests. Glasser v. United States, 315 U.S. 60, 70 (1942). Although the Court "must recognize a presumption in favor of [the defendant's] counsel of choice, . . . that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." Wheat v. United States, 486 U.S. 153, 160 (1988). In the present case, no actual conflict exists nor is there a serious potential for conflict, because Sgt. Taylor did not share any information with Attorney Trant that would inhibit Attorney Trant's ability to represent the Defendant.

Therefore, the Court finds it appropriate to allow the Defendant to continue being represented by the counsel of his choice, Attorney Trant. However, should a conflict arise during preparation for trial or in future proceedings it should be brought to the Court's attention immediately.

**IT IS SO ORDERED**.

**ENTER**:

　　s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

5